The first matter on for argument is Hung-Tri Tran v. Merrick Garland, 18-71813. And you each have 10 minutes total for your side, and so we're ready to proceed on this. I understand, I believe this case is part of the pilot pro bono program, I guess, as far as, which we obviously appreciate all our lawyers that come here. But I want to say on behalf of the panel, in case I forget later and we get involved in questions, that we certainly do appreciate pro bono counsel taking cases for the court because it certainly helps articulate difficult issues so that we have the best information in deciding the cases. And we don't take that for granted, and we do. And it looks like we've also got someone coming from D.C., so we appreciate all of you, with hopes that you're all well-prepared and we're ready to go. So good morning. Good morning. May it please the Court, Marcus Curtis for the petitioner, Mr. Hung-Tri Tran. I'm going to try to reserve three minutes of my time for our pro bono. Thank you. Under this Court's decision in Bonilla, the Court has jurisdiction to review the Board's denial of a motion to reopen Sua Sponte for a constitutional or legal error. And here, the agency legally erred on multiple fronts. It held that De Camp didn't apply to CIMT analysis. It determined that De Camp wasn't a fundamental change in law, presumably because it believed the case didn't apply in the CIMT context. And it held that if De Camp did fundamentally change the law, the change wouldn't affect Mr. Tran's order of removal. Now, all of these are legal determinations, and all of them are incorrect. And when that's the case, when the agency's assessment of exceptional circumstances is tainted by legal error, jurisdiction is proper and remand is the appropriate course. Go ahead. Let me push back on one part of what you said. So let's assume, for the sake of argument, that I agree with you that the IJ got De Champs wrong. Where do you see that the BIA adopted what the IJ said about De Champs? I see that they said, for the reasons articulated in the IJ, we agree with the facts presented in this case to not warrant sui spani reopening of the proceedings. And then, of course, they do say that De Champs is incremental. But where are they adopting the IJ's position that De Champs is inapplicable in the immigration context? Right. I mean, my first response, Your Honor, would be that the portion you read for me was enough for the BIA to have adopted. Well, it says facts, the facts presented in this case. The IJ's discussion of De Champs is not facts. Right, Your Honor. So my second point would be there's no other reason to justify the incremental change determination or the no fundamental change determination. So the BIA adopted that portion of the IJ's decision. And in terms of the rationale to support De Champs' incremental, not fundamental, the only reason that could provide the support would be this misinterpretation of De Champs. Well, why couldn't it be just categorical approach, modified categorical approach? This is difficult. It's evolved over time. A lot of the courts, according to the Supreme Court, including the Ninth Circuit, have gotten it wrong. This is just one more step in the way of a very, very difficult process of sorting out how you determine what kind of crimes fit into what kind of buckets, even without looking at De Champs in the same potentially wrong way the IJ did. How can we review whether that really is incremental or fundamental? If the board or the IJ had said what you said, Judge Bennett, I think this might actually be, it might be more difficult for us to argue that it got it wrong. Because by saying De Champs is incremental because it represents sort of an evolving part of the case law, there's no rationale. I mean, that's essentially restating the conclusion as support for the conclusion. It seems to me, though, too, that you're in your argument that, and we don't conference on these cases, so I don't know what other people think, but I'm just sort of going hypothetically, that your client obviously was here for a really long time, and then they weren't returning people to Vietnam at the time. Are they returning people now? There's actually, so this isn't in the record, Your Honor, but just six months ago, a couple representatives introduced a bill on the Senate floor, or excuse me, House floor, to stop the deportation of Vietnamese refugees if they arrived before 1995, which would apply to Mr. Kramer. And it's not a law right now. Right, it's not a law right now. And it was the last administration who sort of restarted these removals. Well, I think the board obviously, I think it might be difficult to dispute that they recognize that, sua sponte, they do have discretion as to, and obviously, if people live long enough and they wait long enough, which we get in some of these cases, this goes back, what, 30 years, over 30 years, there are going to be changes in the law. And assuming the situation is such that the law was applied at the time, there is an interest in finality of judgments. And if the, and that was one of the reasons that the BIA said, hey, this is, you know, this was a long time ago, and the camp didn't exist at that time, and we recognize we have discretion to reopen it, but we think that the finality of judgments matters. Why couldn't that just be enough here and avoid doing the categorical and the modified categorical and something that gives all of us heartburn, you know, to do that? Well, he's had 30-something years. No, I mean, it's a fair point, Your Honor. So finality, though, in the regulations is sort of the default. I mean, that's the default policy. So the motion to reopen summa sponsae, the whole purpose of the motion to reopen scheme, is to be able to provide an exception to that finality when certain circumstances are met. So it has been a long time. And this isn't a criminal case either. Obviously, in a criminal case, we allow for some collateral attacks if it's on prior removals, correct? Right, correct. This isn't criminal. This isn't criminal. And so the motion to reopen. Now, if he stays another 20 years, then he'll have a really good case. He might, Your Honor. But, again, to your first point, the board has discretion. It could have not erred legally and been able to sort of deny them a motion to reopen summa sponsae for discretionary reasons. But it didn't do that here. Okay, so let me push back on that. I think that at the top of it, I've been trying to be quiet and listen carefully, which is hard for me, but I think that you identified three legal errors that you think IG made. Right, that's correct. And that the BIA adopted all of those three. But I think what we're positing is that there's a, or what I'm positing anyway, didn't the BIA glom on to, that's probably not a legal term, the fourth reason. Do you not read a fourth reason that the IJ gave, which is as a matter of discretion? I did, and I think that was swept in by the BIA. So, in other words, even if I agree with you that there were three legal errors committed by the IJ, it seems to me that the BIA was recognizing that it had discretion for the reasons Judge Callahan and Judge Bennett have been mentioning. Right. They'll deny it anyway. So, is that where we're positioning each other? Right, no, I understand. So, on this, the purported fourth reason, that portion of. The fourth reason is the finality that you're speaking of, is that correct? Right. And perhaps even the never appealed. Yes. The only thing I would tell is that when Wake was asked to appeal the 1994 decision, and he never appealed the denial of his first motion to reopen. Consequently, the court finds that in the interest of finality and immigration proceedings takes precedence in this time. Right. So, what initially, it was difficult for us to deal with that portion of the IJ's decision, but I think part of the difficulty is that it doesn't actually make sense in the context of Mr. Chang's case. Quite frankly, I don't think that sentence would amount to a reasoned decision. Well, I think that's one of the problems we've got. We have to go to review this, and the matter of unbridled discretion is, by definition, we've written quite a bit about, it's almost impossible to review that. So, but you said you think it's not applicable? Well, I mean, I certainly agree the board has significant discretion here, but the reasons given still have to actually make sense in the context of the case before the agency. You can't sort of. Why wouldn't it, though? Why wouldn't what we're calling this fourth reason make sense in the context? If I agree that there's three legal errors, why wouldn't this other issue make sense in the context of this case, please? Right. And it might make sense in the context of other cases, but here, I mean, Mr. Tran would have. I think we're focusing you on LONA, and so I just want to. The court has said that the immigration judge and the board have unfettered discretion to deny a motion to reopen in LONA. And even if the moving party here, Mr. Tran, has made out a prima facie case for relief, were we wrong? So, I think that's what I think Judge Christin and I are asking you to answer. Right, and so the discretionary reasons given here by VA, the reason they don't make sense is that Mr. Tran would have never, one, appealed the denial of his first motion to reopen. I mean, there was no reason to have done that. It wasn't, I think, a fundamental change in law sort of situation. And then the other point about not appealing the original removal order, again, I mean, it was in the mid-'90s. There would have been no decamp argument for him to make at the time anyway. So, yes, the board certainly has discretion, or the agency certainly has discretion, but it can sort of throw in discretionary reasons that don't actually make sense in the context of this case. I mean, it's sort of a broader issue about form decisions at the immigration court level, but that just doesn't work here. Now, in LONA, the reasons did make sense. In fact, in LONA, this was a Judge Callahan opinion. So you're telling me I made sense back then. But it's great that it makes such sense because I think it really clarifies the issues in this case. So in LONA, the petitioner had made a fundamental change argument, but the board denied the motion to reopen for discretionary reasons. And those reasons included the fact that she had already been removed to Mexico years prior and the fact that she could have made the exact same arguments presented in the new precedent at her original removal hearing. So in LONA, the assessment of exceptionality was based on discretionary reasons. Here, it's not. It's based on legal conclusions. When you set your time, I want to make sure that my colleagues have had their questions answered. All right. We're taking a minute over, but I'll still give you two minutes for rebuttal. Okay. Thanks. Good morning. Good morning, Your Honors. May it please the Court, my name is Linda Chang, appearing on behalf of the United States Attorney General. In this case, at bottom, the agency denied sui spante reopening as a matter of discretion, as Your Honors have noted. And to underscore Judge Callahan's statement about if a petitioner waits long enough, laws will change, and potentially to the benefit of a petitioner. Here, the reason that Petitioner gave that he did not appeal removal order, his appeal removal order in 1994, and did not appeal the first motion to reopen in 2007, seems to dovetail your point, because he said that there was no reason to do it at that point. However, if you waited. What I think he's saying is the three reasons he's got here wouldn't have existed then. Correct. And so he just then waited long enough that the reasons came about through the evolving interpretation of the categorical approach and the modified categorical approach, which is still evolving now. Counsel, I want to clarify something with the government. In your brief, you did not cite Bourbon, right? No, that's correct. And this is not a Bourbon case, right? It is not. And, in fact, on page 15 of your brief, you tell us that the board didn't rely on the possibly, the IJ's possibly mistaken view of DeChamps, and so that's irrelevant, right? To the extent that the immigration judge said that DeChamps was only related to aggravated felonies. So the board then clarified the holding. But that's just one example where you say that's irrelevant because the BIA didn't mention it, right? Yes. All right, so then I'm going to move to a different point. The IJ said at the end of his decision, consequently, the court finds that the interest in finality in immigration proceedings takes precedence. The board also didn't rely on that either, right? The board never mentioned that, right? No. I would point to the last line of the board's decision for the reasons articulated in the immigration judge's decision, where then the board cites to IJ 2-3, which is AR 113-114, and that is the discussion of these points. Yeah, but isn't that also a discussion of DeChamps? Correct. So how can it be that the board didn't adopt the DeChamps discussion of the IJ, but it did adopt the finality discussion? So it adopted the finality discussion because it is something that was not explicitly changed or clarified in the board's decision later on. If we look at the next page of the board's decision, it went on to discuss DeChamps specifically and that it was an incremental change rather than a fundamental change. So extra discussion was paid to DeChamps. Yeah, but it didn't declaim the IJ's what I think is wrong discussion of DeChamps, right? The immigration judge's discussion of DeChamps was not necessarily wrong. It summarized it and presented it. Well, I think it's wrong, but putting that aside, the VIA decision does not disclaim the IJ's DeChamps discussion right or wrong, right? It read the IJ's decision in its full context, and if we go to the final page of the immigration judge's decision, we see that it summarizes nonetheless the holding in DeChamps regarding the California Penal Code, Section 459, represents an incremental change. But if we disagree with those three reasons that the opposing counsel has posited, he said there's three legal errors in the IJ's decision. So I think for purposes of hypothetical, if we assume that, just assume if you would, that there are three, all three are errors. The IJ committed three different errors. The question is, for me anyway, and I think the subject matter is getting that, was there not a fourth reason given by the VIA? Are you alluding to the fourth reason being the finality? Yes. So finality, I think, is still swept into the board's statement that for the reasons articulated in the immigration judge's decision. Right. And so the question is, are you reading the VIA to have relied on that as an independent ground? Yes, we are. Is it stand-alone sufficient? Yes, we are for its discretionary relief, or denial of discretionary relief in this case. But you're reading this as they swept in finality, but they didn't sweep in DeChamps and DeChamps doesn't apply to immigration cases. Well, that's not the only thing that the immigration judge said, though, because it did give the alternative holding that, nonetheless, DeChamps regarding the California people, etc., etc. I understand what the position in your brief is. It's just not clear to me that, for example, that that's what nonetheless means. It's not clear to me that nonetheless means. Even if I'm wrong in the above sentence, it's still incremental. I mean, I'm not sure what nonetheless means. Well, then, even if we read further down, the immigration judge gives Petitioner the benefit of the doubt and says that even if the change in the law were a fundamental change, and even if it were applicable in this case, the court probably applied the law in 1994 for a valid removal order in this case. And also I'd like to point out that in recent communications with DHS, it has been indicated that they have made continuous efforts since the removal order was issued in 1994 to try to remove Petitioner. However, there has been no cooperation from Vietnam in issuing travel documents. The latest effort was made in December of 2023, and they still have refused to issue travel documents for Petitioner. And therefore, due to a political element outside of the government's control, we have not been able to execute the order. So, is this another exercise in futility in terms of, I hate to, you know, I mean, we decide what comes to us, and that's not going to, but it just sort of seems like, you know, we're spending a lot of time on something that's never going to happen. I would not say that it's futile. The DHS still continues to make this effort to remove Petitioner, and I would say that they should continue their efforts as it is a valid removal order. Is there any, I don't see it in the record, is there any indication that he's continued to commit crimes? It is not part of this record, so I am not sure. Okay. All right. So, basically, if you summarize your, I would be inclined to say that, although the Supreme Court seems to think that the categorical and the modified categorical approach is easier said than done, I think most of us that have been dealing with it, our hair is on fire for most of the time. So, that being said, yes, but it would appear that the camp, you know, that there may have been an error in that it would apply to this, but that being said, what is your best argument to deny the petition here? If we feel that the legal orders, hypothetically, if we agree that the legal errors that Petitioner has identified were, in fact, legal errors, what is your best argument? Two points on that. So, even if there was a, even if the shams applied in the way that Your Honor hypothesizes, it was not a fundamental shift in the law, and as you have described, it is constantly evolving and is still evolving to this day. And even if it were a fundamental shift in the law, it does not follow that the Board committed legal or constitutional errors simply by denying the discretionary reliefs to respond to a reopening. It is not required, even if there is a finding of a fundamental shift in the law. So, therefore, there was no legal error committed by the agency in this case. All right. Thank you. It doesn't appear we have additional questions, but you have a little time if you want to use it. If Your Honors have any other questions, I'd be happy to answer them.  Thank you very much. Thanks, Your Honors. Just three quick points in response. I just wanted to first reiterate that finality is always a concern. It's the default concern. It's sort of baked into motions to reopen. So, to say that a finality takes precedence in this case, it has to take precedence against something else, some other reasons, not legally erroneous ones. What if we decide all three of the IJ's reasons were erroneous, and we can't tell the extent to which the BIA relied upon those or the other reason? I mean, I think the route there would be to send it back to the agency for better clarification. I mean, if the agency decision is indiscernible. Add other ideas to the case? I mean, possibly, Your Honor. And this kind of gets back to sort of the political context we've alluded to in both sort of arguments. I mean, legislation changes, enforcement priorities change, administration priorities change. But if the agency decision isn't clear enough for the panel to make a clear decision, then I think remand would be the appropriate course there. The other point is just the discretionary reasons, again, this fourth paragraph, that you can't cut and paste and just hope that it sticks if you're the agency. The discretionary reasons have to make sense in the context of the case before it. In LONA, they made sense. That's why the board in LONA said, okay, we acknowledge the fundamental change argument, but here's A, B, and C, why we are going to exercise our discretion to deny the motion to reopen Sua Sponte. We don't have that here. We have three legal errors, and then we have sort of a throwaway paragraph at the bottom that isn't sort of logical in the context of Mr. Tran's case. So we would say that Bonilla controls that the agency legally erred in denying the motion to reopen Sua Sponte, and we ask the court to remand accordingly. All right. This matter will stand submitted. Thank you for your argument, and thank you again for participating in the pro bono program. Our next matter on for argument is United States of America v. Jason D. Taylor, 22-50028.
judges: CALLAHAN, CHRISTEN, BENNETT